No. 26-4298

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

**IN RE EDWARD GILLIAM,**
Debtor.

---

**EDWARD GILLIAM,**
Appellant,
v.
**BARBARA WHITE,**
Appellee.

---

On Appeal from the United States Bankruptcy Appellate Panel
for the Ninth Circuit
**BAP No. CC-25-1188-SGL**
Bankruptcy Case No. 8:12-bk-13356-SC
United States Bankruptcy Court, Central District of California
Honorable Scott C. Clarkson, Bankruptcy Judge
Related State-Court Enforcement Matter:
Barbara White v. Maxine Laquanda Gilliam
Riverside County Superior Court Case No. CVCO2404637

---

# EMERGENCY MOTION UNDER FEDERAL RULE OF APPELLATE PROCEDURE 8(a)(2) AND NINTH CIRCUIT RULE 27-3 TO STAY ENFORCEMENT OF STATE-COURT JUDGMENT, ABSTRACT OF JUDGMENT, AND COLLECTION ACTIVITY PENDING APPEAL; RELIEF REQUESTED BY AUGUST 27, 2026

---

Timothy M. Kowal
Teddy T. Davis
Richard J. Radcliffe
KOWAL LAW GROUP, APC
2901 Pacific Coast Highway, Suite 200
Newport Beach, CA 92663
Telephone: (949) 676-9989; Facsimile: (949) 676-9995
Email: tim@kowallawgroup.com
*Attorneys for Appellant Edward Gilliam*

# CIRCUIT RULE 27-3 CERTIFICATE

Appellant Edward Gilliam ("Appellant") moves this Court, on an emergency basis, for an immediate order staying Appellee Barbara White ("Appellee"), her agents, and all persons acting in concert with her from enforcing, renewing, assigning, collecting on, abstracting, levying, garnishing, executing on, reporting, conducting debtor examinations on, creating liens from, impairing title through, or otherwise using the March 13, 2026 state-court judgment, the April 9, 2026 recorded abstract of judgment, any writ of execution based on them (including the July 6, 2026 application or any corrected or renewed application), the alleged settlement, alleged oral promise, alleged guaranty, or any derivative theory arising from the same alleged obligation pending this Court's review of the discharge-injunction issues. (Decl. of Edward Gilliam ("Edward Decl.") ¶¶ 21–24.)

This appeal is docketed as No. 26-4298. Appellant filed the notice of appeal on or about June 30, 2026, and the Court issued its case-opening notice on July 10, 2026. This is Appellant's first motion in this Court seeking emergency, protective relief. (Edward Decl. ¶ 31.)

Emergency relief is necessary because White obtained a $35,000 default judgment against Appellant's 93-year-old mother, Maxine Gilliam ("Maxine"), on March 13, 2026; recorded an abstract on April 9, 2026; and applied for a writ of execution on July 6, 2026. The clerk returned the writ application only because

items 11 and 18 were incomplete and instructed that it be corrected and resubmitted. Unless stayed, White may use the judgment, abstract, and a corrected writ to create liens, impair title and credit, conduct debtor examinations, levy, garnish, execute, and exert coercive payment pressure against Maxine while also pressuring Appellant to pay the alleged obligation White attributed to him. (Edward Decl. ¶¶ 4, 17, 21–24, 38–40; Decl. of Maxine Laquanda Gilliam ("Maxine Decl.") ¶¶ 1, 32–33.)

The emergency is immediate and concrete, not speculative. White has already sought a writ of execution, and the clerk's rejection did not adjudicate enforceability or prevent prompt resubmission. The recorded abstract also creates a present cloud and permits further collection process before this Court can decide whether the judgment and abstract violate the discharge injunction. The uncertainty of the next enforcement date heightens, rather than diminishes, the need for relief. (Edward Decl. ¶¶ 22–24, 37–39; Maxine Decl. ¶ 32.)

This is not a request to extend Appellant's discharge to Maxine merely because she is his mother. The issue is whether White is using Maxine as a substitute collection target for an obligation White consistently attributed to Appellant, after dismissing him but continuing against Maxine on the same derivative theory. (Edward Decl. ¶¶ 17, 19–20, 40; Maxine Decl. ¶¶ 8–9, 17, 29, 31.)

The declarations state that White did not loan money to Maxine; Maxine did not sign a note, guaranty, assumption, settlement, or reaffirmation agreement; and Edward's post-discharge discussion involved, at most, a conditional voluntary-payment proposal—not a completed settlement. Those threshold facts bear directly on whether White is enforcing a genuine independent obligation or using Maxine to collect Appellant's alleged discharged debt. (Edward Decl. ¶¶ 7–15, 46; Maxine Decl. ¶¶ 3–7, 10–12, 20, 31.)

**(1) Names, Telephone Numbers, Email Addresses, and Office Addresses for the Attorneys for All Parties**

For Appellant:

Timothy Kowal
Richard J. Radcliffe
Kowal Law Group, Inc.
2901 Pacific Coast Highway, Suite 200
Newport Beach, CA 92663
Telephone: (949) 676-9989; Facsimile: (949) 676-9995
Email: tim@kowallawgroup.com
Email: richard@kowallawgroup.com

**State-Court Counsel for Appellee Barbara White:**

Krystle A. Clervaud
The Clervaud Firm, P.C.
10601 Walker Street, Suite 170
Cypress, CA 90630
Telephone: (213) 929-9013
Email: krystle@theclervaudfirm.com

**Bankruptcy Counsel for Barbara White:**

David R. Haberbush
Lane Bogard
Haberbush, LLP
444 West Ocean Boulevard, Suite 1400
Long Beach, CA 90802
Telephone: (562) 435-3456
Email: dhaberbush@lbinsolvency.com
LaneBogard@gmail.com

**(2) Facts Showing the Existence and Nature of the Emergency**

The emergency exists because White holds a March 13, 2026 $35,000 default judgment and an April 9, 2026 recorded abstract against Maxine and has already applied for a writ of execution. The clerk returned the July 6 application for correctable omissions and instructed that it be resubmitted. Unless stayed, White may pursue liens, title impairment, debtor examinations, levy, garnishment, execution, assignment, renewal, and other coercive collection activity before appellate review. (Edward Decl. ¶¶ 21–24, 38–39; Maxine Decl. ¶ 32.)

The urgency is heightened because White continued against Maxine after written notice of Appellant's discharges, after the absence of any valid reaffirmation was raised in court, and after White dismissed Appellant from the Riverside action. White nevertheless pursued the same alleged obligation against Maxine and obtained the undivided $35,000 judgment. (Edward Decl. ¶¶ 16, 19–27, 32; Maxine Decl. ¶¶ 13–17, 22.)

**(3) Why the Motion Could Not Have Been Filed Earlier**

This motion could not reasonably have been filed earlier because the immediate execution threat became concrete when Appellant learned on July 6, 2026, that White had submitted the writ application. Appellant acted after obtaining and reviewing the clerk's return, which identified correctable defects and permitted prompt resubmission, and after repeated unsuccessful efforts to obtain effective stay protection below. (Edward Decl. ¶¶ 23–24, 33–38.)

Returning again to the Bankruptcy Court, the BAP, Riverside County Superior Court, or its Appellate Division would be impracticable and inadequate. Each denied or failed to provide effective stay protection, while the recorded abstract remains active and the writ application may be corrected and resubmitted without advance notice. (Edward Decl. ¶¶ 33–39.)

**(4) When and How Counsel Were Notified and Served and White's Position on the Emergency Motion**

Before filing, counsel notified White's counsel in this matter by email to both email addresses list in this paragraph of the requested emergency relief and requested a stipulation to an immediate stay pending appellate review: David R. Haberbush and Lane Bogard, Haberbush, LLP, 444 West Ocean Boulevard, Suite 1400, Long Beach, California 90802; dhaberbush@lbinsolvency.com and LaneBogard@gmail.com.

Appellant expects White to oppose because she has not vacated the March 13, 2026 default judgment, released the April 9, 2026 abstract, or ceased enforcement after written demands and notice of the discharge issue; instead, she submitted the July 6 writ application. (Edward Decl. ¶¶ 22–25.)

**(5) The Requested Relief Was First Sought Below**

Appellant first sought discharge-enforcement and stay-related relief in the Bankruptcy Court and then sought emergency stay relief from the BAP, Riverside County Superior Court, and the Superior Court's Appellate Division. Each tribunal denied or failed to provide effective protection, leaving the judgment and abstract active and capable of enforcement. (Edward Decl. ¶¶ 33–37.) This Court's intervention is therefore necessary.

## TABLE OF CONTENTS

| | |
|---|---|
| Circuit Rule 27-3 Certificate | 2 |
| Table of Contents | 8 |
| Table of Authorities | 10 |
| I. Introduction | 12 |
| II. Statement of the Case | 15 |
| A. Appellee's Claim Originated as an Alleged Prepetition Debt of Appellant | 15 |
| B. Appellant Received Chapter 7 Discharges Protecting Him From Collection of Prepetition Claims | 16 |
| C. Appellee Later Pursued Litigation Based Upon the Same Alleged Obligation | 16 |
| D. Appellee Ultimately Dismissed Edward but Continued Pursuing Maxine | 17 |
| E. The Bankruptcy Court Declined to Determine Whether the Judgment Functioned as Collection of Appellant's Discharged Debt | 18 |
| F. Continuing Enforcement Creates an Immediate Need for Interim Relief | 19 |
| III. Argument | 19 |

A. This Court Has Jurisdiction and Authority to Preserve the Status Quo Pending Appeal 20

B. Section 524(a) Protects Against Collection of Discharged Debt Regardless of the Form the Collection Takes 21

C. The Existing Record Raises a Serious Question That Appellee's Judgment Is Derivative of Edward's Discharged Debt Rather Than an Independent Obligation of Maxine 23

D. The Courts Below Did Not Resolve the Threshold Federal Question Presented Here 24

E. Sections 524(c), 524(e), and 524(f) Reinforce Rather Than Undermine Appellant's Position 25

1.Section 524 (c) 25

2. Section 524(f) 25

3. Section 524(e) 26

IV. The Balance of Equities Decisively Favors a Stay 27

V. Conclusion 31

Statement of Related Cases 33

Certificate of Compliance 34

## TABLE OF AUTHORITIES


| | |
|---|---|
| Bassett v. Am. Gen. Fin. (In re Bassett), 285 F.3d 882 (9th Cir. 2002) | 25 |
| In re Gurrola, 328 B.R. 158 (9th Cir. Appellate Panel 2005) | 21 |
| In re Blanco, 649 B.R. 571 (Bankr. E.D. Wash. 2023) | 23 |
| In re Getzoff, 180 B.R. 572 (9th Cir. Appellate Panel 1995) | 25 |
| In re Pavelich, 229 B.R. 777 (9th Cir. Appellate Panel 1999) | 21 |
| Leiva-Perez v. Holder, 640 F.3d 962 (9th Cir. 2011) | 19, 26 |
| Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 886 F.3d 803 (9th Cir. 2018) | 30 |
| Nken v. Holder, 556 U.S. 418 (2009) | 19, 26 |
| Taggart v. Lorenzen, 587 U.S. 554 (2019) | 20 |
| 11 U.S.C. § 524(a) | passim |
| 11 U.S.C. § 524(a)(1)–(2) | 20 |
| 11 U.S.C. § 524(c) | passim |
| 11 U.S.C. § 524(e) | 25–26 |
| 11 U.S.C. § 524(f) | passim |
| Fed. R. App. P. 8(a)(2) | 1 |
| Fed. R. App. P. 27(d)(1)(E), (d)(2)(A) | 32 |

Fed. R. App. P. 32(a)(5)–(6), 32(f) 32

9th Cir. R. 27-3 1, 11

# EMERGENCY MOTION UNDER NINTH CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL

## I. INTRODUCTION

May a creditor evade the discharge injunction by collecting the same discharged debt from the debtor's elderly mother while continuing to characterize the money sought as a debt "owed" by the debtor?

Section 524(a) answers that question. It voids judgments determining personal liability on discharged debts and enjoins acts to collect those debts. The injunction protects substance rather than labels. A creditor cannot accomplish indirectly what Congress forbids directly by merely changing the caption of the lawsuit while leaving the underlying obligation unchanged. That is what occurred here.

Appellee Barbara White ("Appellee") consistently maintained that Appellant Edward Gilliam ("Appellant") owed her approximately $30,000 arising from an alleged prepetition transaction. The Bankruptcy Appellate Panel recognized that the Loan Claim arose prepetition and that the 2017 discharge enjoined its collection; the BAP also acknowledged that White's later Settlement Claim was, at least in part, derivative of the discharged Loan Claim. (Edward Decl. ¶ 29.) Yet the

courts below did not decide the dispositive question presented by ongoing enforcement: whether Appellee's pursuit of judgment and execution against Appellant's elderly mother, Maxine Gilliam ("Maxine"), functions as an effort to collect Appellant's discharged obligation through a substitute collection target. That unanswered question is now urgent.

Appellee has obtained a $35,000 default judgment against Maxine, recorded an abstract, and applied for a writ of execution. The clerk returned the July 6, 2026 writ application only for correctable omissions and instructed that it be resubmitted. These are active enforcement instruments that permit liens, execution, levies, debtor examinations, garnishment, and other coercive collection efforts. Every day they remain enforceable increases the risk that Section 524(a)'s protections will be undermined before this Court decides whether the judgment rests on an impermissible effort to collect Appellant's discharged debt. (Edward Decl. ¶¶ 21–24, 38–39; Maxine Decl. ¶ 32.)

Appellant does not seek to extend his bankruptcy discharge to Maxine because she is his mother. Nor does he ask this Court to invalidate any genuinely independent obligation that Maxine may owe. Instead, Appellant seeks only preservation of the status quo while this Court determines whether Appellee has identified any legally enforceable obligation of Maxine that exists independently of

Appellant's discharged debt. The existing record strongly suggests she has not. Appellee never alleged that Maxine borrowed the money. She never identified a separate loan transaction between herself and Maxine. No written guaranty exists. No written assumption agreement exists. No novation exists. No reaffirmation complying with 11 U.S.C. § 524(c) exists. Instead, White consistently described the money sought from Maxine as money allegedly "owed" by Edward. If the debt remained Edward's debt, changing the defendant did not change the debt. Federal bankruptcy law does not permit collection of discharged debt by changing collection targets. Nor does Appellee's assertion that the state-court judgment rests upon an alleged settlement alter that conclusion. Section 524(c) establishes the exclusive method by which a discharged debt may become legally enforceable again. Section 524(f) permits only voluntary repayment; it creates no right of creditor enforcement. A creditor therefore cannot convert an alleged voluntary offer to resolve litigation into an enforceable post-discharge obligation merely by relabeling the transaction a "settlement." Courts evaluating discharge injunctions examine the objective substance of the creditor's conduct, not the terminology selected to describe it. (Edward Decl. ¶¶ 7–15, 17, 20, 46; Maxine Decl. ¶¶ 3–7, 9–12, 20, 31.)

The remaining stay factors overwhelmingly favor immediate relief. Appellee would suffer only temporary delay. By contrast, absent a stay, Appellant faces

continued coercive pressure to pay in order to protect his aged mother, while Maxine faces stress and immediate enforcement against her home, property, finances, privacy, and health. (Edward Decl. ¶ 40; Maxine Decl. ¶¶ 32–33.)

A stay therefore preserves, rather than alters, the status quo. It ensures that this Court—not ongoing state-court enforcement—determines whether the judgment and abstract are lawful before irreversible collection consequences occur.

## II. STATEMENT OF THE CASE

This appeal arises from a dispute over whether Appellee may continue using state-court proceedings to collect what she herself has consistently described as Appellant's alleged debt after that debt was discharged in bankruptcy.

### A. Appellee's Claim Originated as an Alleged Prepetition Debt of Appellant

Appellee alleges that she advanced approximately $30,000 to Appellant while they were involved in a personal relationship during 2008. She has consistently characterized that obligation as money Edward allegedly owed her. Appellee has never alleged that Maxine borrowed those funds, received the proceeds, or entered into the underlying transaction. (Edward Decl. ¶¶ 5–7; Maxine Decl. ¶¶ 3–4.)

During the bankruptcy proceedings below, Appellee likewise identified the alleged Loan Claim as one against Appellant. The BAP recognized that White conceded the Loan Claim arose prepetition and that the 2017 discharge enjoined its collection. (Edward Decl. ¶ 29.)

**B. Appellant Received Chapter 7 Discharges Protecting Him From Collection of Prepetition Claims**

Appellant received a discharge on July 3, 2017, in Bankruptcy Case No. 8:12-bk-13356-SC, after an earlier discharge on March 1, 2009. As a matter of federal law, the discharge voided judgments determining personal liability on discharged debts and enjoined acts to collect such debts as Appellant's personal obligations. No reaffirmation agreement complying with Section 524(c) was ever executed, filed, or approved. Nor has Appellee identified any post-discharge writing that independently recreated Appellant's personal liability for the alleged Loan Claim. (Edward Decl. ¶¶ 10–12.)

**C. Appellee Later Pursued Litigation Based Upon the Same Alleged Obligation**

Following Appellant's discharge, Appellee pursued several state-court actions arising from the same underlying events.

Although Appellee employed different legal labels—including loan, settlement, fraud, and related theories—the factual premise remained the same: White sought recovery of money she alleged Appellant owed her. During the bankruptcy proceedings, Appellee's submissions continued to describe the money sought from Maxine as money allegedly "owed" by Appellant rather than as proceeds of an independent transaction between Appellee and Maxine. (Edward Decl. ¶¶ 13–17; Maxine Decl. ¶¶ 8–10.)

### D. Appellee Ultimately Dismissed Edward but Continued Pursuing Maxine

After the discharge issues were raised in the bankruptcy court, Appellee dismissed Appellant from the Riverside Superior Court action but continued against Maxine. Appellee obtained a $35,000 default judgment against Maxine on March 13, 2026, recorded an abstract on April 9, 2026, and applied for a writ of execution on July 6, 2026. The clerk returned the writ application only for correctable omissions and directed that it be resubmitted. The judgment and abstract remain outstanding and capable of continuing enforcement unless stayed. (Edward Decl. ¶¶ 19–24.)

**E. The Bankruptcy Court Declined to Determine Whether the Judgment Functioned as Collection of Appellant's Discharged Debt**

Appellant sought relief in the bankruptcy court, arguing that Appellee's continued prosecution of the Riverside Superior Court action constituted an effort to collect his discharged obligation through his mother rather than through him. (Edward Decl. ¶¶ 25–28, 33.)

However, the bankruptcy court denied relief. On appeal, the BAP acknowledged that White conceded the Loan Claim arose prepetition and that the discharge enjoined its collection. (Edward Decl. ¶¶ 28–29.)

Second, the BAP recognized that the Settlement Claim was derivative, at least in part, of the discharged Loan Claim. (Edward Decl. ¶ 29.)

Third, the BAP nevertheless affirmed the denial of contempt relief on the knowledge and contempt issues presented by the record. (Edward Decl. ¶ 29.)

The BAP did not decide whether Appellee's post-decision enforcement of the judgment, abstract, and writ process against Maxine presently functions as collection of Edward's discharged debt. That question is now before this Court. (Edward Decl. ¶¶ 23–24, 29, 38–40.)

### F. Continuing Enforcement Creates an Immediate Need for Interim Relief

The appeal remains pending while Appellee holds an enforceable judgment and recorded abstract and has already attempted to obtain a writ of execution against Maxine. The correctable writ application may be resubmitted promptly. Absent a stay, Appellee may use California's judgment-enforcement procedures—including execution, levy, garnishment, judgment liens, debtor examinations, and related devices—before this Court determines whether the judgment itself violates the discharge injunction. (Edward Decl. ¶¶ 21–24, 38–39; Maxine Decl. ¶ 32.)

Because those enforcement measures threaten injuries that cannot be fully remedied after the fact, immediate interim relief is necessary to preserve the status quo pending appellate review. (Maxine Decl. ¶¶ 32–33.)

## III. ARGUMENT

A stay pending appeal is appropriate where the movant demonstrates either a likelihood of success on the merits or, at minimum, serious legal questions coupled with a balance of hardships sharply favoring relief. *Nken v. Holder*, 556 U.S. 418, 426–34 (2009); *Leiva-Perez v. Holder*, 640 F.3d 962, 966–70 (9th Cir. 2011).

This appeal satisfies both standards. At minimum, it presents a substantial federal question concerning the scope of Section 524(a)'s discharge injunction and

whether a creditor may continue collecting a discharged debt by redirecting collection efforts from the discharged debtor to a third party while still treating the money sought as the debtor's obligation. That question warrants preservation of the status quo pending review.

### A. This Court Has Jurisdiction and Authority to Preserve the Status Quo Pending Appeal

This Court has appellate jurisdiction under 28 U.S.C. § 158(d)(1) over the BAP's final decision. Federal Rule of Appellate Procedure 6(b)(1) makes Rule 8 applicable to this appeal, and Rules 8(a)(1)(C) and 8(a)(2), together with 28 U.S.C. § 1651(a), authorize interim relief preserving effective appellate review. Edward seeks protection of his own discharge from conduct he alleges is collecting his debt through Maxine, so the asserted injury is his own. The requested order would not review or vacate the Riverside judgment, adjudicate Maxine's independent liability, or extend Edward's discharge to her; it would temporarily restrain White, a party to this appeal, from using the judgment to collect the obligation Edward contends is discharged. The motion therefore does not seek forbidden appellate review of the state judgment; federal courts retain authority to determine and enforce the scope of bankruptcy injunctions notwithstanding contrary state-court action. *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1082–84 (9th Cir. 2000) (en banc); *McGhan v. Rutz (In re McGhan)*, 288 F.3d 1172, 1179–

81 (9th Cir. 2002). To the extent 28 U.S.C. section 2283 applies, Appellant submits that the requested restraint falls within its "expressly authorized" exception because section 524(a)(2) itself operates as a federal injunction and section 105(a) authorizes orders necessary to carry out the Bankruptcy Code.

**B. Section 524(a) Protects Against Collection of Discharged Debt Regardless of the Form the Collection Takes**

Section 524(a) is one of the Bankruptcy Code's central protections. It does more than discharge liability. It permanently prohibits efforts to collect discharged debts as personal liabilities of the debtor. Congress deliberately drafted the statute broadly. Section 524(a)(1) voids judgments determining personal liability on discharged debts. Section 524(a)(2) separately enjoins "the commencement or continuation of an action" and "any act" to collect such debts.

The breadth of that language reflects Congress's concern with economic reality rather than procedural form. Courts therefore examine the objective effect of a creditor's conduct rather than the label attached to it.

The Supreme Court confirmed that principle in *Taggart v. Lorenzen*, holding that discharge violations are governed by an objective standard rather than the creditor's subjective understanding of the law. 587 U.S. 554 (2019).

Likewise, the Ninth Circuit BAP has repeatedly recognized that the discharge injunction is self-executing and that judgments inconsistent with Section 524(a) are void to the extent they impose discharged liability. *In re Pavelich*, 229 B.R. 777

(9th Cir. Appellate Panel 1999); In re Gurrola, 328 B.R. 158 (9th Cir. Appellate Panel 2005). Those principles govern here.

*In re Blanco* 649 B.R. 571 (Bankr. E.D. Wash. 2023) applies the *Taggart* objective test and holds that civil contempt may be appropriate when a creditor acts on an objectively unreasonable understanding of the discharge order or the law governing its scope. *Blanco* further states that "the dependency on a postpetition event does not prevent a debt from arising prepetition," (*id*. at 578 [citation omitted]), and that because the *Taggart* standard is objective, "it does not matter whether [the creditor] was aware of or understood the determinative Ninth Circuit authorities." *Id*. at 580. Disagreement or claimed misunderstanding alone does not create fair ground of doubt. *Blanco* accordingly directed the creditor to dismiss its state court action, order the creditor to refrain from pursuing any other collection, and found the creditor in contempt. *Id*. at 581, 583.

Under *Taggart* and *In re Blanco*, an objectively reasonable creditor could not believe that the undivided judgment remained collectible after counsel's admission, the BAP's recognition of the discharge, repeated written demands to cease collection, and the absence of any valid reaffirmation or independent contract. The judgment, abstract, and attempted writ constitute continuation of collection activity prohibited by § 524(a)(2). The earlier denial of contempt did not authorize those later acts.

### C. The Existing Record Raises a Serious Question That Appellee's Judgment Is Derivative of Edward's Discharged Debt Rather Than an Independent Obligation of Maxine

Appellee's allegations create the central issue presented by this appeal.

Throughout the litigation, Appellee consistently identified the money she sought as money allegedly owed by Appellant. She never alleged that Maxine borrowed the money. She never alleged that Maxine received the proceeds. She never produced a written guaranty. She never produced a written assumption agreement. (Edward Decl. ¶¶ 5, 7–9, 17, 20; Maxine Decl. ¶¶ 3–4, 9, 17, 20, 31.)

She never identified any novation.

Instead, after the discharge issues arose, Appellee dismissed Appellant and continued pursuing judgment against Maxine based upon the same alleged obligation. The BAP itself recognized two facts that make this issue substantial. (Edward Decl. ¶¶ 19–20.)

First, the BAP acknowledged that White conceded the Loan Claim arose prepetition and was subject to the discharge. Second, it recognized that the Settlement Claim was derivative, at least in part, of the Loan Claim. (Edward Decl. ¶ 29.) Those findings do not necessarily resolve the present appeal, but they reveal why a stay is necessary.

If the Settlement Claim derives from the discharged Loan Claim, then continued enforcement against Maxine may constitute nothing more than

continued collection of Appellant's discharged debt through a substitute collection target. That is a question requiring appellate review. A stay simply preserves the status quo until that question is answered.

The defendant changed. The alleged debt did not. If the purported debt remained Appellant's, then Section 524(a) prohibits collecting it merely by redirecting collection to a different defendant.

**D. The Courts Below Did Not Resolve the Threshold Federal Question Presented Here**

The bankruptcy court and the BAP focused substantially on White's knowledge and the timing of the state-court litigation when addressing contempt. (Edward Decl. ¶¶ 26, 28–30.) That was not the only question.

Nor is it the question presently before this Court. The present motion concerns continuing enforcement of an existing judgment and abstract after the bankruptcy proceedings established the discharged character of the underlying Loan Claim.

Appellant consistently raised continuing violations and post-notice enforcement. The BAP memorandum and the May 14, 2026 oral-argument transcript reflect discussion of post-notice continuation and derivative enforcement, yet no court has stopped the present judgment, abstract, or writ process. (Edward Decl. ¶¶ 29–30, 33–39.)

Whether the lower courts correctly resolved the contempt issues is the subject of the merits appeal. The narrower question presented by this motion is whether continued enforcement should proceed while that appeal remains pending. Because neither court squarely determined whether the existing judgment presently functions as collection of Appellant's discharged obligation, the merits present at least a serious legal question warranting interim relief.

### E. Sections 524(c), 524(e), and 524(f) Reinforce Rather Than Undermine Appellant's Position

Appellee may suggest various legal theories to explain why the judgment survives Appellant's discharge. None eliminates the serious questions presented here.

#### 1. Section 524(c)

Congress established a comprehensive procedure for making discharged debt legally enforceable again. No compliant reaffirmation agreement exists here. There is no executed written reaffirmation. No agreement was filed with the bankruptcy court. No approval was obtained. If Appellee's present judgment ultimately depends upon reviving Edward's discharged obligation, Section 524(c) presents a substantial obstacle to enforcement. (Edward Decl. ¶ 12.)

#### 2. Section 524(f)

Section 524(f) permits debtors voluntarily to repay discharged obligations.

It creates no corresponding right of creditor enforcement. A voluntary willingness to provide money cannot be transformed into an enforceable obligation merely because litigation later ensues. Otherwise, Section 524(c)'s carefully prescribed reaffirmation procedures could be avoided simply by characterizing post-discharge discussions as settlements rather than reaffirmations. That is inconsistent with the statutory scheme and Ninth Circuit precedent, including *Bassett v. Am. Gen. Fin. (In re Bassett)*, 285 F.3d 882 (9th Cir. 2002), and *In re Getzoff*, 180 B.R. 572 (9th Cir. Appellate Panel 1995), which require strict compliance with § 524(c) before a discharged debt may become legally enforceable again. (Edward Decl. ¶ 15; Maxine Decl. ¶ 10.)

**3. Section 524(e)**

Nor does Section 524(e) resolve this appeal. That provision preserves legitimate independent liability of nondebtors. It does not create such liability. Nothing in Section 524(e) authorizes collection of a discharged debt merely because the creditor chooses a different defendant. Accordingly, if Appellee ultimately proves that Maxine independently incurred her own legally enforceable obligation, Section 524(e) may preserve that obligation.

But that issue is disputed.

Appellee has never identified an independent transaction between herself and Maxine. Instead, the record repeatedly characterizes the money sought from

Maxine as money allegedly owed by Appellant. Section 524(e) therefore cannot eliminate the substantial question presented on appeal. (Edward Decl. ¶¶ 7, 17, 20; Maxine Decl. ¶¶ 3–4, 9, 17, 20, 31.)

For purposes of a stay, Appellant need not establish certainty of success.

He need only demonstrate a substantial likelihood of success or, at minimum, serious legal questions warranting preservation of the status quo. As demonstrated above, this appeal satisfies both standards.

The BAP recognized that the Loan Claim was discharged, acknowledged the derivative character of the Settlement Claim, and left unresolved whether the judgment now being enforced constitutes an impermissible effort to collect Appellant's discharged debt through a substitute collection target. (Edward Decl. ¶ 29.) That unresolved question lies at the heart of this appeal.

Accordingly, Appellant has established the requisite likelihood of success or, at minimum, serious questions going to the merits under Nken and Leiva-Perez.

## IV. THE BALANCE OF EQUITIES DECISIVELY FAVORS A STAY

The balance of equities tips strongly in favor of preserving the status quo until this Court resolves the appeal. If a stay issues, Appellee would face only a temporary delay in collecting on the judgment. Delay alone is limited prejudice where the prevailing party retains the ability to resume enforcement if the judgment survives appellate review. Appellee identifies no evidence that assets are

disappearing, that collection will become impossible, or that comparable prejudice will result from maintaining the status quo.

The harm to Appellant is different in kind, not degree. The injury a stay would prevent is not the payment of money; money can be repaid if the judgment is later reversed. The injury is the loss of the discharge protection itself. Section 524(a) guarantees more than an eventual accounting; it guarantees freedom from the collection process during the period the discharge is in force. Once Appellee levies, garnishes, examines the judgment debtor, records liens, or extracts payment through the coercive machinery of state enforcement, that protection is spent. No later ruling can restore the freedom from collection that the discharge was meant to secure in the first place, because the coercion will already have occurred. (Edward Decl. ¶¶ 39–40; Maxine Decl. ¶ 32.)

Appellant seeks to protect his own discharge, not to assert Maxine's rights. Section 524(a)(2) enjoins any act to collect a discharged debt "as a personal liability of the debtor," and the injunction runs in favor of the debtor whose debt was discharged. The relevant question is not who is named on the state-court judgment but whose obligation the enforcement effort reaches. Appellant contends the enforcement now directed at Maxine seeks payment of the very obligation his discharge enjoins. He therefore has a direct, personal stake in stopping it, and the

injury he asserts—continued collection of his discharged debt and the coercive pressure it places on him—is his own. (Edward Decl. ¶¶ 17, 20, 40.)

The point is not that collection would be inconvenient or expensive to unwind. It is that the specific interest Section 524(a) protects cannot be vindicated after the fact. A creditor who collects a discharged debt during appeal and is later ordered to disgorge has still defeated the statute for the interim: the debtor endured exactly the collection pressure Congress forbade.

Irreparable harm should be determined "by reference to the purposes of the statute being enforced." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 818 (9th Cir. 2018). Here, Section 524(a) protects freedom from collection pressure itself; later repayment cannot restore that protection after coercive enforcement occurs. (See Edward Decl. ¶ 40; Maxine Decl. ¶¶ 32–33.)

The Bankruptcy Code protects debtors not merely against payment of discharged debts, but against the coercive pressure of collection itself. Section 524(a) exists to ensure that debtors receive the fresh start promised by federal law—not only after prevailing on appeal, but throughout the period during which the discharge remains legally effective.

The equities are particularly compelling because the collection efforts at issue are directed toward Appellant's ninety-three-year-old mother. Appellant does not contend that her age alone entitles him to relief. Rather, the practical effect of

the judgment is that continued enforcement against Maxine necessarily exerts pressure on Appellant to satisfy an obligation he contends was discharged years ago. If Appellant is ultimately correct on the merits, continued enforcement during the pendency of this appeal would accomplish precisely the coercion that Section 524(a) was enacted to prevent. (Edward Decl. ¶¶ 4, 40; Maxine Decl. ¶¶ 1, 32.)

Conversely, granting a stay does not finally determine anyone's rights. It merely preserves the existing positions of the parties until this Court determines whether Appellee possesses an enforceable independent claim against Maxine or instead seeks to collect Appellant's discharged obligation through a different defendant. If Appellee prevails on appeal, she may resume collection with little more than the passage of time. If Appellant prevails after enforcement has already occurred, many of the injuries resulting from that enforcement—including coercive collection pressure, impairment of the bankruptcy fresh start, and the consequences of completed collection proceedings—cannot readily be undone. (Edward Decl. ¶¶ 39–40; Maxine Decl. ¶¶ 32–33.)

Where one party faces only temporary delay and the other risks losing the very federal protection at issue in the appeal, the balance of equities strongly favors interim relief.

## V. CONCLUSION

This motion does not ask the Court to decide the ultimate merits of Appellant's appeal. It asks only that the Court preserve the status quo until those merits can be decided.

Appellant has demonstrated, at minimum, serious questions going to the merits of whether Appellee's continuing enforcement of the Riverside Superior Court judgment and abstract constitutes an impermissible effort to collect a debt that federal bankruptcy has discharged. The appeal presents an important question concerning the scope of Section 524(a)'s discharge injunction and whether a creditor may accomplish indirectly what the Bankruptcy Code forbids directly by redirecting collection efforts to a third party while continuing to characterize the obligation as the debtor's own.

The remaining stay factors point in the same direction. Appellee faces only a temporary postponement of collection pending appellate review. By contrast, absent a stay, Appellant risks losing the principal protection the Bankruptcy Code affords—a meaningful discharge from coercive collection—before this Court has determined whether the judgment itself is lawful. If enforcement proceeds now and Appellant ultimately prevails, much of the protection that Congress intended Section 524(a) to provide will already have been lost.

Accordingly, Appellant respectfully requests an order staying White and those acting in concert with her from enforcing the March 13, 2026 judgment, the April 9, 2026 recorded abstract, the July 6, 2026 writ application or any corrected or renewed application, and all related collection activity pending disposition of this appeal. (Edward Decl. ¶¶ 21–24, 38–39.)

If the Court cannot rule immediately, Appellant respectfully requests issuance of a temporary administrative stay sufficient to preserve the status quo while this motion is considered and, if necessary, for a reasonable period thereafter to permit further review.

August 6, 2026 KOWAL LAW GROUP, APC

By: *_/s/ Richard J. Radcliffe_*
Timothy M. Kowal
Teddy T. Davis
Richard J. Radcliffe
*Attorneys for Edward Gilliam*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rules, Appellant identifies the following related matters:

In re Edward Gilliam, BAP No. CC-25-1188-SGL; Bankruptcy Case No. 8:12-bk-13356-SC, United States Bankruptcy Court for the Central District of California.

Barbara White v. Maxine Laquanda Gilliam, Riverside County Superior Court Case No. CVCO2404637.

White v. Gilliam, Orange County Superior Court Case No. 30-2023-01366497-CU-CO-CJC.

Small Claims Case No. SCC02300966.

## CERTIFICATE OF COMPLIANCE

I certify that this emergency motion complies with the 5,200-word limit in Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,196 words (not including the tables, this Certificate of Compliance, or the foregoing Statement of Related Cases).

This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in 14-point Times New Roman, a proportionally spaced typeface.

August 6, 2026 KOWAL LAW GROUP, APC

By: *___/s/ Richard J. Radcliffe___*
Timothy M. Kowal
Teddy T. Davis
Richard J. Radcliffe
*Attorneys for Edward Gilliam*